## Steele v. Storm's Administrator.

(Decided November 1, 1927.)

### Appeal from Laurel Circuit Court.

1. Executors and Administrators.—In suit by heirs of wife to compel husband, wife's administrator, to settle estate, issuance of stock certificate to wife, which remained in her name for many years, is prima facie evidence that stock belonged to wife.

2. Executors and Administrators.—In suit by heirs of wife against husband as administrator of wife to require settlement of estate, evidence held to show that wife was owner of money standing to her credit in bank.

3. Executors and Administrators.—In suit by heirs of wife to compel husband, as adminstrator of wife's estate to settle estate, time deposit certificate standing in name of wife at time of her death, proceeds of which were collected by another, but not shown by record to have been given to such other, must be treated as part of wife's estate at time of her death, for which husband must account.

4. Executors and Administrators.—In suit by heirs of wife against husband as administrator to compel settlement of wife's estate, note owing to wife at time of her death held part of wife's estate, for which husband must account.

5. Executors and Administrators.—In suit by heirs of wife against husband as administrator to compel settlement of wife's estate,

note executed to husband in payment of note due wife held part of wife's estate, for which husband must account.

6. Depositions.—In suit by heirs of wife against husband as administrator to compel settlement of estate, deposition of husband relating directly or indirectly to transactions with wife was incompetent under Civil Code of Practice, sec. 606, subsec. 2, prohibiting person testifying for himself concerning any transaction with deceased.

M. A. GRAY, GEORGE G. BROCK and THOS. F. YOUNG for appellants.

HENRY C. HAZELWOOD and REAMS & JOHNSON for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Roan Storm died in Laurel county intestate in May, 1921. Her father and mother had previously died, and she left no children. At the time of her death W. A. Storm was her husband, and he was appointed, and qualified, as administrator of her estate.

The appellants, the collateral kindred of the decedent, Roan Storm, believing that she left personal property of considerable value as well as real estate, instituted suit against W. A. Storm, administrator of the estate of Roan Storm, and against him as an individual. The petition alleged that, at the time of her death, Roan Storm was the owner, and in possession, of a large amount of money and personal property, including cash, bank stock, notes and mortgages, live stock, household furniture, etc., and that upon her death W. A. Storm, as administrator of her estate, took possession of her personal property without having an appraisal, and without filing any schedule of the property in the county court clerk's office. The petition alleged that Roan Storm was the owner of a tract of land at the time of her death. It was alleged that she owed no debts, and that there were no creditors of her estate. The prayer of the petition was for a settlement of the estate, and for sale of the land described in the petition. W. A. Storm was called upon to file an inventory of the personal property owned by Roan Storm at the time of her death.

W. A. Storm filed his answer as administrator, and denied that his wife, Roan Storm, owned any property, or was in the possession of any property, at the time of

her death other than one Seth Thomas clock over 50 years old, one feather bed over 25 years old, and one note of Dr. M. W. Steele for $1,272. He denied her ownership of the land described in the petition, but admitted that she was the owner of a one-fourth undivided interest in a 50-acre tract of land in Laurel county. After he admitted that she owned a one-fourth undivided interest in the land, he alleged that he and those under whom he claimed had been in the adverse possession of six-sevenths of the land, and that he was the owner of six-sevenths of the land.

Later W. A. Storm, administrator, filed an amended answer, and withdrew the allegation in his original answer that Roan Storm was the owner of the $1,272 note and mortgage. He claimed ownership of the note individually in his amended answer. He filed a separate answer individually, in which he claimed that he was the owner of all the personal property standing in the name of Roan Storm at the time of her death. He mentions the $1,272 Steele note, and ten shares of stock in the First National Bank of Corbin. He alleged that he bought the stock of the bank and paid for it out of his own funds, and that he had it issued in the name of Roan Storm for the purpose of pleasing her, as he had been advised by her doctors to do everything he could to prevent her becoming irritated and nervous, and that he did business in her name for the sole purpose of pleasing her. He alleged that she had been an invalid for 30 years, and unable to do any work, and that, not only the bank stock was put in her name to please her, but also the $1,272 Steele note. He alleged that at the time of his marriage to her she had no property, except a few household goods, one horse, and a small tract of land, which was described in the petition. He alleged that he had labored hard and procured the money and property which was mentioned in the petition by his own industry. He claimed everything except the Seth Thomas clock and the feather bed.

The proof in this case discloses that, at the time of the marriage of W. A. Storm and Roan Storm on January 1, 1880, neither of them owned any property worth mentioning other than the 50-acre tract of land which come to Roan Storm from her first husband. Both of them were thrifty and willing to work. They engaged in farming on the small farm mentioned, and it was enlarged by the purchase of additional acreage. They

raised cattle, sheep, and hogs, and, in addition, they showed an unusual ability in the production of potatoes, cabbage, onions, beans, and other like crops suitable for sale in small quantities in the neighborhood. Chickens, eggs, butter, and milk were also produced, and the products of the little farm were sold to the mining camps and to the residents of the town of Corbin. As the money accumulated from the sale of these products, they loaned it at a high rate of interest.

The proof shows that Roan Storm was a woman of unusual ability along the lines of accumulating money, and, while an effort was made to prove that she was in ill health for many years, and that she was childish, dominating in her disposition and capricious, the weight of the evidence clearly establishes that she was equally interested with her husband in building up the small fortune which she left at the time of her death. Thirty years prior to her death it is shown that she was loaning money in her own name. The Hon. Don C. Edwards testified that he boarded with them long years ago, and that he borrowed money from both of them at the time. He was under the impression at that time that she had under her control and management about $3,000.

All of the evidence shows that W. A. Storm was a hard-working man, and no doubt he did his part towards the support of himself and his wife, but no one can read the evidence in this case without coming to the conclusion that they treated their business as a partnership affair.

It is shown by the evidence that Roan Storm was the owner of ten shares of bank stock at the time of her death of the value of $2,800. This stood in her name, and there is no evidence which would justify this court in holding that she was not the owner of that stock. The fact that the stock certificate was issued to her many years ago is prima facie evidence, at least, that it was hers, and certainly there is no evidence in this record to overcome the presumption that it was her stock by reason of its being in her name.

At the time of her death Roan Storm had in the bank to her credit $8,000. This sum was not placed in the bank at one time, but it had been accumulating from year to year. This money belonged to Roan Storm at the time of her death according to the record in this case. There is no evidence tending to show that it was not her money other than such as comes from witnesses who state that

W. A. Storm had money which he loaned from time to time, and that he was a hard-working, thrifty man. It is true that there is a statement of one or more witnesses that Roan Storm had said that the money which they had came through W. A. Storm, and she wanted him to have every bit of it. On one occasion it is testified that she said her husband worked and made the money, but she carried the pocket book and took care of the money. Placing it most favorably to W. A. Storm, it could only be said that there is some evidence tending to show that he earned the money, but, taking the evidence as a whole, it preponderates in favor of the theory that Mrs. Storm was the owner of the money standing to her credit in the bank at the time of her death.

There was a time deposit certificate standing in her name at the time of her death for $750. At the time of the taking of the proof it had been indorsed by W. A. Storm as administrator, and by T. J. Steele. The proceeds of the time deposit certificate appear to have been collected by T. J. Steele. He was present at the home of Roan Storm on the night of her death. He was her nephew, and at the time he was a consumptive invalid. It appears that Mrs. Storm and W. A. Storm agreed to give him $1,000, and W. A. Storm paid him $250 in cash at the time, and, as soon as he qualified as administrator, he indorsed and delivered to T. J. Steele the certificate of time deposit. The evidence offered to support these facts is not competent, but the certificate itself shows that T. J. Steele received the $750 from the First National Bank as the proceeds of the time deposit certificate. At the time of the death of Roan Storm the certificate stood in her name, and, while it may be that she gave it to T. J. Steele, there is no evidence in the record which we have been able to find which establishes that fact. Therefore it must be treated as a part of the estate of Roan Storm at the time of her death.

The note for $1,272 owing to her by Dr. M. W. Steele at the time of her death was a part of her estate.

W. W. Storm owed Roan Storm a note for $500 at the time of her death, and thereafter he executed a note to W. A. Storm for that amount, including the interest of $75. This note is also a part of the estate of Roan Storm.

The deposition of W. A. Storm was not competent under the provisions of subsection 2 of section 606, Civil Code. No person shall testify for himself concerning

any transaction with, or act done or omitted to be done by, one who is dead, with certain exceptions not necessary to note at this time. The entire testimony of W. A. Storm relates either directly or indirectly to transactions with Roan Storm. He was testifying for himself as against the estate of a dead person. His interest in the matter was direct and certain.

When the testimony of W. A. Storm is eliminated, there is no substantial evidence to support the judgment of the chancellor. We conclude that the money and evidences of debt enumerated above belong to the estate of Roan Storm, and W. A. Storm must account for them.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.